```
Joe P. Josephson, Esq.,
Josephson & Associates, PC
912 West 6th Avenue
Anchorage, Alaska  99501
Tel. (907) 276-0151
Facsimile (907) 276-0155
Alaska Bar No. 6102018
Attorney for Plaintiff
```
_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
_____
JENNIFER HUANG McBEATH,  )
Ph.D.,                   )
                         )
        Plaintiff,       )
                         )
    v.                   )
                         )
UNIVERSITY OF ALASKA, &  )
CAROL LEWIS, Ph.D.,      )
                         )
        Defendants.      )   Civil Action No. _____
_____)
```

### **COMPLAINT**

Comes now the plaintiff, JENNIFER HUANG McBEATH, Ph.D., by and through her attorney, Joe P. Josephson, and for her Complaint against the defendants, UNIVERSITY OF ALASKA, and CAROL LEWIS, Ph.D., states and alleges as follows:

**I. JURISDICTION AND VENUE.**

1. This Court has jurisdiction of the claims herein pursuant to 28 USC sec. 13331 and 1343(4). This civil action arises under the Constitution and laws of the United States. Plaintiff is alleging violations of her rights under Title VII

1

PDF created with pdfFactory Pro trial version www.pdffactory.com

of the Civil Rights Act of 1964, as amended (42 USC secs. 20003 *et seq*.).

2. Venue herein is proper under 28 USC secs. 1391(b) and 42 USC sec. 20003-5(f)(3).  Defendant UNIVERSITY OF ALASKA is an agency of the State of Alaska, and the alleged unlawful employment practices were committed within the State of Alaska. The said defendant is an "employer" within the meaning of the Equal Employment Opportunity Act of 1972 [42 USC sec. 20003(a), P.L. 92-261, 86 Stat. 103 (1972)].

**II.  PARTIES.**

3. Plaintiff is a citizen of the United States, and is a resident of the State of Alaska.  Plaintiff is female. Plaintiff is of Asian (Chinese) background and racial origin.

4. Defendant UNIVERSITY OF ALASKA ("the University") is and has been engaged in activities affecting commerce and, at all pertinent times, has had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  Defendant CAROL LEWIS, Ph.D. ("Dr. Lewis"), to whom references are made in this Complaint, is the Dean of the School of Natural Resources and Agricultural Sciences at the University of Alaska, and the Director of the University's Agricultural and Forestry Experiment Station and she has been such at all times pertinent.

PDF created with pdfFactory Pro trial version www.pdffactory.com

**III.  PROCEDURAL REQUIREMENTS.**

5. On or about May 4, 2007, plaintiff filed a charge of discrimination, satisfying the requirements of 42 USC secs. 2000e3-5(b) and (c), with the Equal Employment Opportunity Commission.  Such charge was filed within one hundred eighty (180) days after the alleged unlawful employment practice occurred.  On or about October 15, 2007, less than ninety (90) days prior to the filing of this complaint, the Equal Employment Opportunity Commission issued to plaintiff a Notice of Right to Sue with respect to such charge of discrimination.

**IV. CLAIMS FOR RELIEF.**

   **A. First Claim for Relief: Discriminatory Treatment.**

   *Subpart IVAa. Introduction.*

6.   Plaintiff is a scholar who has served the defendant University for approximately thirty (30) years.  In addition to her work as a teacher and advisor, plaintiff has established research projects designed to assist Alaska farmers and advance Alaska agriculture generally.

7. Among her activities have been her research in plant disease diagnostics, in the biological control of plant diseases (inventing a versatile microorganism which can control many plant pathogens), and in developing Alaska seed potatoes for export to other countries.

8.  Federal money in support of the plant disease

3

PDF created with pdfFactory Pro trial version www.pdffactory.com

diagnostics is provided in two ways:

<u>*Subpart IVAb*</u>. *Formula funding*.

9. So-called "Hatch research projects" are provided under a long-standing program, by which the Congress of the United States annually appropriates money to states, for agricultural research within the states. The amount received by each state is formula-driven, depending upon objective and measurable formula factors. Currently, and in recent years, federal funding for Hatch agricultural research projects in Alaska have been diverted by defendants for other purposes.

<u>*Subpart IVAc*</u>. "*Earmarks*".

10. Additionally, as more particularly described below, Congress has appropriated money for Alaska agricultural research through annual "earmarks" advocated by the Honorable Ted Stevens, United States Senator, for the advancement of scientific programs conceived of and supervised by the plaintiff, and, moreover, it was she herself who provided information to Senator Stevens and explained the need for the earmarks.

<u>*Subpart IVB*</u>. *Plant Disease Diagnostics*.

11. In her work in plant disease diagnostics, plaintiff and the laboratory she has supervised have assisted communities, farmers, and home gardeners to solve both disease problems and disputes related to plant diseases.

4

PDF created with pdfFactory Pro trial version www.pdffactory.com

12. Plaintiff's work has been nationally recognized by the American Phytopathological Society, and by many experts in the field of plant disease diagnostics. Such recognition has redounded to the credit and benefit of the University as well as to plaintiff, individually and professionally.

13. Notwithstanding plaintiff's expertise and reputation in the field of plant disease diagnostics, Defendant Lewis, acting on behalf of the University and as its agent, took a series of actions which have adversely affected, and which do adversely affect, both plaintiff and the plant disease diagnostic program, *e.g.:*

-- forbidding plaintiff to attend the Western Plant Disease and Pests Diagnostic Network Meeting, and even communicating with the Network Chair for the purpose of having plaintiff excluded from the Network Meeting; and

-- appointing a Cooperative Extension Agent (even though the appointee had no training or expertise in any of the areas required for the position), despite plaintiff's having been the Alaska Representative to the Cooperative Agricultural Pest Survey("CAP") program and other federal and national programs on disease diagnosis and research programs for more than two decades.

*Subpart IVC. Control of Plant Diseases*.

14. In 1986, plaintiff discovered cold tolerant

5

Trichoderma, a versatile microorganism which can be utilized to control many plant pathogens.

15.  In 1989, plaintiff entered into a profit-sharing agreement with the defendant University, and then wrote (with a patent lawyer) the patent application for cold-tolerant Trichoderma.  During the early 1990s, the invention received patents from more than ten countries.

16.  In the late 1990s, the University transferred the patent rights to plaintiff and obligated her to commercialize the patent, while promising plaintiff access to "facilities and resources to continue research of Patent rights."

17.  Thereafter (between 1997 and 2007), plaintiff invested and expended more than $150,000.00 of her personal funds on patent annuities and on facilitating the commercialization of the patent.  Plaintiff's work both in research and commercialization of cold-Tolerant Trichoderma remain major aspects of her approved workload as a University employee.

*Subpart IVD.  Virus Free Potato Germplasm Project.*

18.  In the late 1980s, Alaska potato farmers were frustrated by bacterial ring rot (BRR), which became an epidemic in this state.  In the United States, BRR is a quarantined disease, restricting movement of the product.  In 1989, Alaska farmers asked plaintiff for assistance.  Plaintiff provided assistance to the farmers as a result or byproduct of the virus-

6

PDF created with pdfFactory Pro trial version www.pdffactory.com

free potato germless project.

19. Moreover, since 1990 and up to the present, plaintiff has worked on a virus-free seed potato for export, and has developed a system to produce laboratory-tested disease-free seed potatoes, negotiating export protocols for the delivery of the disease-free seed potatoes from Alaska to China and Taiwan.

20. At the plaintiff's request, the Honorable Ted Stevens, United States Senator from Alaska, agreed to attempt to help fund the virus-free seed potato program through federal appropriation earmarks, in recognition of the importance of the program to the nation and the world.  Funding began in Fiscal Year 2002, and has continued annually since that time.  Today, Alaska is the only place of origin from which seed potatoes may enter Taiwan (Republic of China) as well as the only place of origin for the shipment of seed potatoes to the mainland People's Republic of China.

21.  Notwithstanding the importance and success of the program, the support of Senator Stevens, and the intent of the Congress of the United States in approving the funding, the defendant University, by and through its agent, defendant Lewis, in 2007, prevented the use of appropriated funds for research, then notified plaintiff, after the fact, of the suspension of funds (upon the ostensible ground of a late financial report, for which plaintiff bore no responsibility).  Despite repeated

7

PDF created with pdfFactory Pro trial version www.pdffactory.com

requests for the release of funds, funds have not been released. Plaintiff received two years of the funds, but the other five years have been diverted.

22. Plaintiff has had a long scientific background with Hatch projects since she joined the Agricultural Experiment Station of the University of Alaska in 1980, , as a full-time research technician.

23. In 1986, plaintiff received approval for a research associate position within the Hatch research program being conducted by plaintiff at the Agricultural Experiment Station.

24. However, in 2004, defendants deprived plaintiff of the technician assisting her, and, later, in 2005, defendants terminated the Hatch General research program being conducted by plaintiff without her knowledge or permission.

25. In May, 2006, plaintiff submitted a new Hatch General proposal for "Project W-1147".

26. After considerable review, plaintiff's 2006 Hatch General program was approved in May or June, 2007, but was provided with limited funding and with no provision for a research associate and with provision for only three months' salary for plaintiff.

27. The treatment of plaintiff by defendants, as described in paragraphs 21, 24, 25 and 26, has been and is discriminatory and plaintiff's gender and race have been and are factors in

8

PDF created with pdfFactory Pro trial version www.pdffactory.com

such treatment. Defendants have discriminated against plaintiff by withholding and eliminating technical support; by slowness in the processing of proposals by plaintiff; in suspending funding for Biological control of disease virus-free potato germplasm research, adversely impacting the operation of the program, plaintiff's research capability and scientific progress, and plaintiff's reputation and income. Members have been treated in like manner;

28. Plaintiff is the only faculty member at the agricultural research station who has two approved Hatch approved projects, but who is without means to perform the stipulated research, due to having no funding to purchase chemicals or reagents, or to maintain equipment;

29. On or about October 25, 2007, defendant terminated the funding of Dr. Mingyuan Cheng, the only technical support in the laboratory supervised by plaintiff. Plaintiff then proposed a position for Dr. Cheng as a visiting scientist, with assignments compatible with ongoing research in that laboratory, and with funding from non-University sources, but even so, the University, through defendant Lewis, declined to grant Dr. Cheng visiting scientist status as well as access to the on-campus laboratory.

30. The defendants obstructed numerous research opportunities which, but for such obstructions, would have been

PDF created with pdfFactory Pro trial version www.pdffactory.com

available to plaintiff.

31.  In at least one instance, defendant Lewis submitted her own proposal for virus-free potato germplasm earmark funds. Her proposal used language which, verbatim, was taken from language used by plaintiff.

32.  Plaintiff reported the plagiarism described in the preceding paragraph to the defendant University and requested an investigation.  Plaintiff was assured that an investigation woud be conducted.  To date, however, the University has not indicated its findings resulting from the investigation, if indeed an investigation was conducted and, on information and belief, has not taken any disciplinary action.

### B. Second Claim for Relief: Defamation.

33. Defendant Lewis, over the course of years, continuing through 2007, has defamed plaintiff's reputation with various agencies and individuals, by falsely assailing plaintiff's integrity, character and ability with respect to (1) research program funding; (2) ethics and intellectual honesty;  and (3) program management and scientific competence.

34. Dr. Lewis's statements or implications, described in paragraph 33, were made by her with knowledge of their falsity, and for the malicious purpose of causing plaintiff injury and damages, and so were made without legal privilege or factual justification.

10

PDF created with pdfFactory Pro trial version www.pdffactory.com

35. The amount of the damages as a consequence of defendant Lewis's defamation of plaintiff exceeds $10,000.00 and will be proved at trial.

Wherefore, plaintiff prays for the following relief:

1. For preliminary and permanent injunctive relief enjoining and restraining the defendants, or either of them from discriminating against plaintiff because of her gender or race, either because of those factors (or either of them) standing alone or in combination or mixture with other factors;

2. For entry of an order requiring that the defendants provide plaintiff with technical and research assistance commensurate with her scientific responsibilities;

3. For entry of a money judgment fully compensating plaintiff for the loss of income heretofore sustained by her, or sustained by her up to the date of judgment, as a result of the defendants' conduct as complained of herein and as a result of similar contact between the date of this complaint and the date of judgment;

4. For entry of a money judgment in favor of the plaintiff and against defendant Lewis, compensating plaintiff for the damages she has sustained, and which will be proved at trial, because of the said defendant's defamation of plaintiff's character and abilities;

5. For the recovery of plaintiff's costs and attorney fees

11

PDF created with pdfFactory Pro trial version www.pdffactory.com

incurred herein; and

     6. For such other, different or further relief as the court or jury may find just and proper.

     DATED January 14, 2008, at Anchorage, Alaska.

                        __/s/Joe.P Jophson_____  
                        Joe P. Josephson  
                        Alaska Bar No. 6102018  
                        Attorney for Plaintiff McBeath  
                        912 West 6th Avenue  
                        Anchorage, Alaska  99501  
                        Tel. (907) 276-0151  
                        Facsimile (907) 276-0155

PDF created with pdfFactory Pro trial version www.pdffactory.com

PDF created with pdfFactory Pro trial version www.pdffactory.com